**SCHIFF HARDIN LLP**
**BRUCE A. WAGMAN** *Pro Hac Vice*
bwagman@schiffhardin.com
**ROBERT G. ENGEL, OSB #01176**
rengel@schiffhardin.com
One Market, Spear Street Tower, 32nd Floor
San Francisco, CA 94105
(415) 901-8700
(415) 901-8701

**Craig J. Capon**, OSB #98192
**HARRANG LONG GARY RUDNICK P.C.**
craig.j.capon@harrang.com
360 E. 10th Avenue, Suite 300
Eugene, OR 97401
(541) 485-0220
(541) 686-6564

Of Attorneys for Plaintiffs
CHIMPS, INC., INTERNATIONAL PRIMATE
PROTECTION LEAGUE and
MARGUERITE GORDON

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| CHIMPS, INC., INTERNATIONAL PRIMATE PROTECTION LEAGUE, and MARGUERITE GORDON,<br><br>Plaintiffs,<br><br>v.<br><br>PRIMARILY PRIMATES, INC.,<br><br>Defendant. | CASE NO. 07-6149-HO<br><br>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO CHANGE VENUE** |

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 1

I. INTRODUCTION ............................................................................................................. 1

II. FACTUAL BACKGROUND ........................................................................................... 1

III. ARGUMENT ................................................................................................................... 3

        A.     The Amount in Controversy Exceeds $75,000 Under Any Interpretation of the Rule. ............................................................................ 3

        B.     The District of Oregon is a Proper Venue for this Action. ............................. 6

               1.    *A Substantial Part of the Contractual Events Occurred in Oregon.* ............................................................................................ 6

               2.    *Venue is Proper Because This Court Has Personal Jurisdiction over PPI.* ................................................................... 7

        C.     Transfer of Venue Is Not Justified In This Action. ......................................... 9

IV. CONCLUSION ............................................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Bates v. C & S Adjusters, Inc.*,
 980 F.2d 865 (2d Cir. 1992) ............................................................................................. 6

*Burger King Corp. v. Rudzewicz*,
 471 U.S. 462 (1985) ......................................................................................................... 8

*Cohn v. Petsmart, Inc.*,
 281 F.3d 837 (9th Cir. 2002) ........................................................................................... 3

*Consolidated Data Terminals v. Applied Digital Data Systems, Inc.*,
 708 F.2d 385 (9th Cir. 1983) ......................................................................................... 11

*Coyle v. P.T. Garuda Indonesia*,
 180 F. Supp. 2d 1160 (D. Or. 2001) ................................................................................ 6

*Decker Coal Co. v. Commonwealth Edison Co.*,
 805 F.2d 834 (9th Cir. 1986) ........................................................................... 6, 7, 8, 9, 11

*Exxon Mobil Corp. v. Allapattah Servs.*,
 545 U.S. 546 (2005) ......................................................................................................... 4

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,
 328 F.3d 1122 (9th Cir. 2003) ......................................................................................... 9

*Hirsch v. Blue Cross, Blue Shield of Kansas City*,
 800 F.2d 1474 (9th Cir. 1986) ......................................................................................... 8

*Hunt v. Wash. State Apple Adver. Comm'n*,
 432 U.S. 333 (1977) ......................................................................................................... 3

*In re Ford Motor Company/Citibank*,
 264 F.3d 952 (9th Cir. 2001) ........................................................................................... 5

*Jackson v. American Bar Ass'n*,
 538 F.2d 829 (9th Cir. 1976) ........................................................................................... 3

*Jones v. GNC Franchising, Inc.*,
 211 F.3d 495 (9th Cir. 2000) ...................................................................................... 9, 10

*Omeluk v. Langsten Slip & Batbyggeri A/S*,
 52 F.3d 267 (9th Cir. 1995) ............................................................................................. 8

*Panavision Int'l L.P. v. Toeppen*,
 141 F.3d 1316 (9th Cir. 1998) ......................................................................................... 8

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981) ................................................................................................. 10

*Raptor Inc. v. Elanex Pharmaceuticals Corp.*,
  2000 WL 1617998, *1 (D.Or. 2000) .......................................................................... 7

*Ridder Bros., Inc., v. Blethen*,
  142 F.2d 395 (9th Cir. 1944) ...................................................................................... 3

*Sanchez v. Monumental Life Ins. Co.*,
  102 F.3d 398 (9th Cir. 1996) ...................................................................................... 3

*St. Paul Mercury Indem. Co. v. Red Cab Co.*,
  303 U.S. 283 (1938) ................................................................................................... 3

*Stewart Org. v. Ricoh Corp.*,
  487 U.S. 22 (1988) ..................................................................................................... 9

*Triangle Fabricators v. Forward Indus.*,
  866 F. Supp. 467 (D. Or. 1994) ............................................................................... 10

*Unicru, Inc. v. Brenner*,
  2004 WL 785276, *12 (D. Or. 2004) ............................................................... 6, 8, 10

## STATUTES

28 U.S.C. § 1332(a) ............................................................................................................ 3

28 U.S.C. § 1367 ................................................................................................................ 4

28 U.S.C. § 1391(a)(1) ....................................................................................................... 7

28 U.S.C. § 1391(a)(2) ....................................................................................................... 6

28 U.S.C. § 1391(c) ............................................................................................................ 8

28 U.S.C. § 1404(a) ........................................................................................................ 3, 9

Federal Rules of Civil Procedure 12(b)(1) ........................................................................ 3

Federal Rules of Civil Procedure 12(b)(3) ........................................................................ 3

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs Chimps, Inc., International Primate Protection League ("IPPL"), and Marguerite Gordon bring this action to clarify the parties' legal rights under three contracts for the transfer of animals from defendant Primarily Primates, Inc. ("PPI") to Plaintiffs. Plaintiffs are an individual dedicated to animal welfare and protection, and two animal sanctuaries whose main purposes are to rescue, rehabilitate, and permanently retire animals who are neglected, abused or discarded by others, and to provide conservation education and protection throughout the world.

For purposes of this procedural motion, the legal analysis pertains largely to a contract to send two chimpanzees to Chimps, Inc., an animal sanctuary in Bend, Oregon. Defendant intentionally entered into this contract, knowing the chimpanzees would be sent to Bend, where they would be provided care and support for the rest of their lives. Defendant also knew, as Plaintiffs will demonstrate here, that the value of the contract to Chimps, Inc. was in excess of $1,450,000. Likewise, the value of the contracts with the other two Plaintiffs easily exceeds the amount in controversy required to invoke this Court's jurisdiction. Finally, because the chimpanzees are in Bend, as is Chimps, Inc., and because this case involves issues with respect to the documents establishing Plaintiffs' right to permanent custody of the animals at issue, venue is proper in this Court. Defendant's motion should be denied.

## II. FACTUAL BACKGROUND

Chimps, Inc.'s primary mission is to provide lifetime care and protection to chimpanzees and big cats in need of homes, and to educate the public on chimpanzee conservation. Complaint, ¶¶ 1, 14. IPPL is an internationally-recognized leader in primate care, particularly in the housing and care of gibbons — highly endangered arboreal apes native to the tropical forests of Southeast Asia. Complaint, ¶¶ 1, 15. Plaintiff Marguerite Gordon similarly

has devoted her life to animal protection. Complaint, ¶¶ 1, 67. It was because of their devotion to animal welfare that each Plaintiff agreed to provide lifetime care and sanctuary to animals living in a state of severe neglect and suffering.

In October 2006, PPI was housing approximately 700 animals in conditions that were unacceptable under any standard. *See, e.g.*, Complaint, ¶¶ 5-7, 20, 29-31, 35-37. This sad situation came to the attention of the Texas Attorney General, who sued PPI. In response, the Texas court appointed Lee Theisen-Watt ("the Receiver") as PPI's legal representative, and ordered her to do what was best for the animals and take care of the business of PPI. Complaint, ¶¶ 37-45. Overcrowding and unsuitable housing were significant contributors to the problems plaguing the animals. Complaint, ¶¶ 30-31. Working with veterinarians and caregivers, the Receiver identified a number of animals who could and should be moved out of PPI in order to reduce the number of animals housed at PPI and transfer them to facilities that could better care for them. Complaint, ¶ 42. As a result, many animals were rescued from PPI. Plaintiffs were among the rescuers. Complaint, ¶¶ 43-45.

Chimps, Inc. entered into an "Animal Transfer Agreement" with PPI, which contemplated the transfer of Emma and Jackson (two chimpanzees) to Bend, Oregon. Complaint, ¶ 70 and Exhibit A. The parties also agreed that Chimps, Inc. would provide for the lifetime care and sanctuary of Emma and Jackson at its facilities in Bend, Oregon. *Id.* IPPL and Ms. Gordon entered into similar contracts with respect to the twelve gibbons and a longhorn steer. Complaint, ¶¶ 66-68, 71, 72 and Exhibits B and C. Each Plaintiff paid for the animals' transport from PPI, and the parties to each contract intended a permanent transfer of the animals to Plaintiffs' custody. *See, e.g.*, Complaint, ¶ 76. Since those transfers, the animals at issue have been rehabilitated and settled into healthy and supportive environments with other animals of their species. Complaint, ¶ 9.

In April 2007, PPI began harassing Plaintiffs and threatening them with legal action if Plaintiffs did not return the animals at issue, despite the contractual transfer to Plaintiffs for lifetime care. Complaint, ¶¶ 11-12. Various individuals associated with Defendant sent

34992.34992-0000
669224.1

Page 2- PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO CHANGE VENUE

letters and emails, and made phone calls, to demand the return of the animals. *Id.* In order to protect the animals and their own interests in the Animal Transfer Agreements, Plaintiffs brought this action seeking a declaratory judgment so that they could ensure their right to provide lifetime care to the animals in question, and in the alternative, quantum meruit and a lien for services should the animals be returned to PPI. On July 27, 2007, PPI moved to dismiss, or in the alternative, to change venue.

### III. ARGUMENT

Defendant moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(3), or in the alternative for a change of venue pursuant to 28 U.S.C. section 1404(a). Because the amount in controversy exceeds $75,000, and because the Animal Transfer Agreement between Chimps, Inc. and PPI contemplates performance in Oregon thereby rendering this venue proper, that motion should be denied.

#### A. The Amount in Controversy Exceeds $75,000 Under Any Interpretation of the Rule.

A federal court has diversity jurisdiction over a case "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977); *see also Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002).[1] In such cases, "the amount in controversy" is generally considered to be "the value of the right to be protected or the extent of the injury to be prevented." *Jackson v. American Bar Ass'n*, 538 F.2d 829, 831 (9th Cir. 1976). Any right is a valid object of litigation, so long as "an adequate monetary measure of the right sought to be protected" can be established. *Id.* It is equally long-standing law that the jurisdictional threshold is satisfied if

---

[1] Defendant does not challenge Plaintiffs' assertion that complete diversity of citizenship exists.

either party — not merely the plaintiff — risks gaining or losing the requisite amount. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 405 (9th Cir. 1996) (citing *Ridder Bros., Inc., v. Blethen*, 142 F.2d 395 (9th Cir. 1944)). A plaintiff's assertion that the amount in controversy exceeds the jurisdictional amount is accorded great weight, and it "must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Sanchez*, 102 F.3d at 402 (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938) (emphasis omitted)). Here, there is no question that the value of the rights Plaintiffs received when they entered into the contracts was worth far more than the $75,000 minimum threshold.[2]

The monetary value of the contracts at issue resolves any question about the amount in controversy. When entering into the Animal Transfer Agreements, Plaintiffs were agreeing to spend hundreds of thousands of dollars for lifetime care, housing and medical expenses of the rescued animals – in addition to the costs of transport as well as any new construction required for the animals. Declaration of Paula Muellner in Support of Plaintiffs' Opposition to Motion to Dismiss ("Muellner Dec."), ¶¶ 5-6; Declaration of Shirley McGreal in Support of Plaintiffs' Opposition to Motion to Dismiss ("McGreal Dec."), ¶¶ 4-5; Declaration of Marguerite Gordon in Support of Plaintiffs' Opposition to Motion to Dismiss ("Gordon Dec."), ¶¶ 3-4. For example, Chimps, Inc. spends approximately $1,480 each month to care for a single chimpanzee. Muellner Dec., ¶ 7. The annual cost for a single chimpanzee averages $17,760; for Emma and

---

[2] In its Motion to Dismiss, Defendant PPI expends great time and energy convincing the Court that the Plaintiffs' claims cannot be aggregated. Plaintiffs have no need nor intention to aggregate their claims for purposes of establishing this Court's jurisdiction. Plaintiffs do note, however, that even if one of the plaintiffs does not satisfy the jurisdictional minimum, the claim is still properly before this Court. In a diversity action with multiple plaintiffs, it is sufficient that one plaintiff meets the amount-in-controversy requirement. *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 566 (2005). Federal courts may exercise supplemental jurisdiction over other plaintiffs not meeting the requirement if their claims arise out of the same case or controversy and diversity is not destroyed. *Id.*; 28 U.S.C. § 1367 (supplemental jurisdiction).

Jackson, the annual cost is thus roughly $35,520. Muellner Dec., ¶ 7. Because Emma and Jackson are each expected to live a minimum of forty more years, when Chimps, Inc. entered into the Animal Transfer Agreement with PPI, it entered into a contract valued at *a minimum of $1,420,800.* Muellner Dec., ¶ 8. Through that commitment to providing Emma and Jackson with a good and safe life, Chimps, Inc's principals made it clear – to the Defendant, to the world, and to this Court – that the services they would provide under the contract were worth more than one million dollars to them. Because of their dedication to chimpanzees, Chimps, Inc. would actually place a significantly higher value on the Animal Transfer Agreement, based on the worth of giving Emma and Jackson a good life.

The same goes for the other Plaintiffs. Based on detailed recordkeeping, IPPL knows that it will spend approximately $165,000 each year to care for the twelve gibbons saved from PPI. McGreal Dec., ¶ 6. Gibbons can live up to forty years in captivity, so that (based on an estimate of the twelve gibbons' ages and expected lifespans) when IPPL contracted to provide lifetime care for them, it assumed the contract was worth *no less than $2,145,000.* McGreal Dec., ¶ 7-8. Given their international stature as the gibbons' representative, IPPL's members likely would put an even higher price on the deal. Regardless, IPPL has made it clear that the Animal Transfer Agreement was worth well more than $75,000 to IPPL, because of its contractual obligation and commitment to healthy and comfortable lives for the twelve gibbons. Similarly, when Ms. Gordon entered into her contract with PPI to save the longhorn steer, she believed she could be required to and would gladly pay more than $100,000 to transport, care for, feed, and provide medical treatment for the steer. Gordon Dec., ¶ 5. And like the other Plaintiffs, based on her lifelong dedication to protecting the lives of animals, she valued the contract far in excess of that number, which is more than sufficient to satisfy the amount in controversy. Gordon Dec., ¶ 7.

Put another way, the parties entered into a contract. Plaintiffs, whose mission involves the care and protection of animals, negotiated with Defendant for the right to provide lifetime sanctuary, and the financial and other obligations incumbent upon them in maintaining that

right. The value of the contract to Plaintiffs (and their supporters) is, at the very least, the amount of money they must pay to ensure the animals' well-being. That amount satisfies the requisite amount in controversy for purposes of this Court's exercise of diversity jurisdiction.[3]

Each of the Plaintiffs has alleged sufficient damages and potential injury to satisfy the amount in controversy requirement. As a result, PPI's motion should be denied. Additionally, under the rule in the Ninth Circuit, the cost of declaratory relief to PPI can also be taken into account, if there is any question about plaintiffs' proof. *See In re Ford Motor Company/Citibank*, 264 F.3d 952, 958 (9th Cir. 2001). Although PPI has recently entered into an agreement with Texas state officials that ends the receivership required to address grave and widespread animal mistreatment at their facility, PPI, as a non-profit entity, must now repair its reputation with potential financial supporters. Certainly, a judicial declaration that PPI is unfit to care for primates would severely hinder that effort. Because Ninth Circuit law permits the jurisdictional amount to be met by considering the value of the object at issue to either party, PPI's significant financial stake in this declaratory action alone should satisfy the jurisdictional amount.

**B. The District of Oregon is a Proper Venue for this Action.[4]**

   1. *A Substantial Part of the Contractual Events Occurred in Oregon.*

Venue lies in this Court under two separate statutory bases. 28 U.S.C. section 1391(a)(2) provides, in relevant part, that a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." "The 'substantial part' requirement 'does not require that a majority of events take place' in Oregon, 'nor that . . . Oregon be the 'best'

---

[3] Each plaintiff also spent substantial funds connected with transport of the animals, as well as some veterinary care and rehabilitation. Muellner Dec., ¶ 4-6; McGreal Dec., ¶ 3-5; Gordon Dec., ¶ 2-4. These amounts simply add to the value of the contracts, which already satisfy the jurisdictional minimum.

[4] Plaintiffs note that defendant does not dispute that this Court has *jurisdiction* over the action, only whether venue is proper.

forum or have the most substantial contacts.'" *Unicru, Inc. v. Brenner*, 2004 WL 785276, *12 (D. Or. 2004) (citing *Coyle v. P.T. Garuda Indonesia*, 180 F. Supp. 2d 1160, 1173 (D. Or. 2001), *rev'd on other grounds*, 363 F.3d 979 (9th Cir. 2004)); *see also Bates v. C & S Adjusters, Inc.*, 980 F.2d 865, 867 (2d Cir. 1992) (observing that the "substantial part" element does not "require the District Court to determine the best venue"). Here, though, Oregon is indeed the best forum with the most contacts relevant to the dispute. In fact, virtually all the relevant facts with respect to the Chimps, Inc.-PPI contract occurred in Oregon – far surpassing the minimal requirement under the Ninth Circuit's test. The Ninth Circuit has further held that venue is proper in the place of intended performance of a contract. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 842 (9th Cir. 1986). Here, that is Oregon.

*Decker Coal* examined the "substantial part" requirement in connection with a challenge to venue in a breach of contract action. The court held that a substantial part of the events giving rise to a contract claim occur in the place of intended performance. *Id*. Here, of course, performance under the Chimps, Inc.-PPI agreement is in Oregon. "We favor this rule because the place of performance is determined at the inception of the contract and therefore parties can anticipate where they may be sued. Furthermore, the place of performance is likely to have a close nexus to the underlying events." *Id*. In *Decker Coal*, the contract at issue required that Decker Coal Company:

- Supply coal from its mine in Decker, Montana or possibly Wyoming; and
- Deliver the coal F.O.B. to the Montana mine.

*Id.* at 837. The Court found that venue was proper in Montana, where the plaintiffs had filed the action, because the plaintiff was a resident of Montana and "the claim arose there." *Id.* at 841; *see also Raptor Inc. v. Elanex Pharmaceuticals Corp.*, 2000 WL 1617998, *1 (D.Or. 2000) (venue proper in Oregon where it was contemplated that work would be performed in Oregon and work actually was performed in Oregon).

Under this standard, Oregon is a proper venue for this action. The Animal Transfer Agreement between Chimps, Inc. and PP! contemplates that all but a few hours of this

34992.34992-0000
669224.1

Page 7- PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO CHANGE VENUE

forty-year contract will occur in Oregon. And, of course, the chimpanzees – subjects and beneficiaries of the agreement – are in Oregon. The Agreement requires that Chimps, Inc.:

- Transfer Emma and Jackson to a sanctuary *in Oregon*;

- "Provide Emma and Jackson with complete and competent care, including housing, feeding, cleaning, and medical care," at its facilities *in Oregon*; and

- "Provide permanent care and lifetime sanctuary," which the parties anticipated would involve the chimpanzees living for forty years at Chimps, Inc's sanctuary *in Oregon*.

Complaint, Exhibit A. Just as in *Decker Coal*, venue is proper in Oregon because both parties to the Animal Transfer Agreement involving Emma and Jackson intended and agreed that virtually all performance arising under the Agreement would take place in Oregon.

      2.     *Venue is Proper Because This Court Has Personal Jurisdiction over PPI.*

A civil action may be brought in "a judicial district where any defendant resides, if all defendants reside in the same State...." *See* 28 U.S.C. § 1391(a)(1). "[A] defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." *See* 28 U.S.C. § 1391(c). Because PPI is subject to personal jurisdiction here, venue is appropriate.

A district court may exercise (specific) personal jurisdiction where:

> (1) The nonresident defendant [has done] some act or consummate[d] some transaction with the forum or perform[ed] some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim ... arises out of or results from the defendant's forum-related activities; and
> (3) [the] exercise of jurisdiction must be reasonable.

*Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998) (citing *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995)); *see also Unicru*, 2004 WL 785276, at *4.

With respect to the first prong, "[p]urposeful availment analysis turns upon whether the

defendant's contacts are attributable to his own actions or solely to the actions of the plaintiff." *Decker Coal Co.,* 805 F.2d at 840 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985)); *Hirsch v. Blue Cross, Blue Shield of Kansas City,* 800 F.2d 1474, 1480 (9th Cir. 1986). PPI has made multiple forays into Oregon in connection with this action. PPI's court-appointed representative contracted to have the chimpanzees sent *into Oregon.* The Agreement was negotiated with Chimps, Inc., an Oregon nonprofit corporation with its principal place of business in Bend, Oregon. At all times PPI intended to and understood it was affecting Oregon residents, and sending chimpanzees into Oregon. Nor were the contract negotiations the end of PPI's intentional involvement with Oregon relevant to this case. That is, beginning in April, PPI initiated repeated communications with Chimps, Inc. in Oregon, attempting to breach their contract and demanding that Emma and Jackson be returned. Complaint, ¶¶ 11, 12, 84, 85, 96. By so doing, PPI further involved itself with the events leading up to this action.

The second requirement follows directly – PPI entered into the contract with the knowledge that Emma and Jackson would be sent to Oregon, and then threatened Chimps, Inc. with legal action. They have now made it clear they intend to breach the contract by inserting themselves into the interests of the state of Oregon and an Oregon resident with respect to the chimpanzees who are in Oregon. Defendant's "forum–related activities" began with the formation of the contract which would be performed in Oregon, and then continued with its efforts to breach and illegally obtain possession of the chimpanzees. This action arose directly from that conduct.

Finally, the exercise of personal jurisdiction over PPI is quite reasonable, given its extensive involvement with Oregon. *See Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.,* 328 F.3d 1122, 1132 (9th Cir. 2003) (setting forth elements to be considered in determining reasonableness); *see also Decker Coal Co.,* 805 F.2d at 840.[5] PPI purposefully interjected itself

---

[5] The seven elements the Ninth Circuit consider are: "(1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants'
[Footnote continued on next page]

into Oregon by entering into an agreement with a nonprofit corporation located in Oregon. PPI sent the chimpanzees – threatened species under the Endangered Species Act and wild animals subject to the laws of Oregon – into the state. Oregon has a substantial interest in adjudicating the dispute because of both the presence of Chimps, Inc., and of the chimpanzees, as well as the state's interest in its human and nonhuman residents. Because an efficient resolution of the controversy can be obtained in Oregon, and Oregon offers the most convenient and effective forum to the Plaintiffs because it is where one of the Plaintiffs is located and where two of the animals at issue are located, the mere existence of an alternate forum does not outweigh the factors in favor of jurisdiction in Oregon. *See Decker Coal Co.*, 805 F.2d at 840-41. In signing an agreement with an Oregon nonprofit corporation concerning two animals to be cared for in Oregon, PPI could have anticipated being called upon to present a defense in Oregon, and thus it is reasonable for Oregon to exercise personal jurisdiction over PPI.

### C. Transfer of Venue Is Not Justified In This Action.

Finally, there is no basis for transferring this case pursuant to 28 U.S.C. section 1404(a). Under that statute, "the district court has discretion 'to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). As a result, a defendant "'must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum.'" *Unicru*, 2004 WL 785276, at *13 (citations omitted); *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981). "Absent a 'strong showing of inconvenience' by the defendants, this court will not 'upset[] the plaintiff's choice of

---

[Footnote continued from previous page]
state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Harris Rutsky & Co. Ins. Servs.*, 328 F.3d at 1132; *see also Decker Coal Co.*, 805 F.2d at 840.

forum.'" *Triangle Fabricators v. Forward Indus.*, 866 F. Supp. 467, 472 (D. Or. 1994) (citations omitted)).

To satisfy its burden, a defendant must show that the new venue is strongly favored. *See Unicru*, 2004 WL 785276, at *13. Courts analyze the following factors in deciding transfer motions:

> (1) convenience of the parties, (2) convenience of the witnesses,
> (3) ease of access to the evidence, (4) location where the relevant
> agreements were negotiated and executed, (5) familiarity of each
> forum with the applicable law, (6) local interest in the controversy,
> (7) the relative court congestion and time of trial in each forum,
> and (8) the contacts relating to the plaintiff's cause of action in the
> chosen forum.

*GNC Franchising*, 211 F.3d at 498-99; *see also Unicru*, 2004 WL 785276, at *13. Defendant's brief is oddly absent of any supportable reason – and certainly any "strong showing" – why the case should be in Texas. Defendant has failed to meet its high threshold and has not demonstrated that venue in Texas is strongly preferable to the Oregon forum selected by the Plaintiffs. Instead, the facts of this case weigh heavily in favor of maintaining suit in Oregon.

PPI relies merely on the relative geographic proximity of the parties to this Court to argue that Oregon is an inconvenient forum. Defendant's assertion of mere as-the-crow-flies distances between Plaintiffs' domiciles and Texas or Oregon proves nothing. First, Plaintiffs apparently believe, based on their filing in Oregon, that it is more convenient for the case to be tried there. Second, Plaintiffs – including Chimps., Inc. principals – are the main witnesses here. Third, PPI's recitation of absolute distances does not consider the difficulty in getting to a Texas court – especially one that Defendant has not even identified.

Such claims hardly amount to a "strong showing" of inconvenience. Instead, the relevant factors point only to Oregon. Here, only *one* of the four parties is located in Texas, yet PPI argues it is a more convenient geographical location for the majority of the parties. This is clearly not true, and the remaining three parties affirmatively selected Oregon as their preferred forum. Even where "'transfer would merely shift rather than eliminate the inconvenience. . .'

the convenience-of-the-parties consideration does not favor transferring venue." *See Unicru,* 2004 WL 785276, at *13 (citing *Decker Coal Co.,* 805 F.2d at 843). Here, of course, there would be an inequitable shift and transfer would cause inconvenience for all of the Plaintiffs. The convenience factors favor suit in Oregon.

The Chimps, Inc. Agreement was negotiated and executed with the performance intended in Oregon. There is also substantial local interest in the controversy because Chimps, Inc. is dedicated to educating the local community about chimpanzee conservation and is located in Oregon. Finally, to the extent Emma and Jackson need to be viewed or otherwise considered, they of course are in their home at Chimps, Inc.

Finally, although the Animal Transfer Agreements are to be interpreted under Texas law, that fact alone does not justify transfer of the case to Texas. None of the contracts at issue has a forum selection clause, indicating that Texas is not, in fact, the presumptively proper forum. Federal courts sitting in diversity regularly apply the laws of other states. *See, e.g., Consolidated Data Terminals v. Applied Digital Data Systems, Inc.,* 708 F.2d 385, 390-91 n.3 (9th Cir. 1983) (applying New York law, as specified in the choice of law provision, to the contract issues arising in a claim filed in California). Where, as here, the Defendant has not made a strong showing of inconvenience, the court should not upset the Plaintiffs' choice of forum.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss, or in the alternative to change venue, should be denied.

DATED: September 4, 2007

SCHIFF HARDIN LLP
BRUCE A. WAGMAN *Pro Hac Vice*
ROBERT G. ENGEL

HARRANG LONG GARY RUDNICK P.C.
CRAIG J. CAPON

By: _____
BRUCE A. WAGMAN

Attorneys for Plaintiffs

34992.34992-0000
669224.1

Page 12- PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO CHANGE VENUE

# CERTIFICATE OF SERVICE

I certify that on September 4, 2007, I served or caused to be served a true and complete copy of the foregoing **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO CHANGE VENUE** on the party or parties listed below as follows:

✓ Via CM/ECF Filing

___ Via First Class Mail, Postage Prepaid

___ Via Facsimile

___ Via Personal Delivery

William H. Sherlock
Hutchinsom, Cox, Coons, DuPriest, Orr & Sherlock, P.C.
777 High Street
Eugene, OR 97401-2782
Attorneys for Defendant
Primarily Primates, Inc.

SCHIFF HARDIN, LLP

By: _____
Bruce A. Wagman, *Pro Hac Vice*
bwagman@schiffhardin.com
Robert G. Engel, OSB #01776
rengel@schiffhardin.com
Telephone: (415) 901-8700
Facsimile: (415) 901-8701

HARRANG LONG GARY RUDNICK, P.C.
Craig J. Capon, OSB #98192
craig.j.capon@harrang.com

Of Attorneys for Plaintiffs
CHIMPS, INC., INTERNATIONAL PRIMATE PROTECTION LEAGUE, and MARGUERITE GORDON

Page 4 - PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO CHANGE VENUE

34992.34992-0000
669215.1