**SCHIFF HARDIN LLP**
**Bruce A. Wagman,** *Pro Hac Vice*
bwagman@schiffhardin.com
**Robert G. Engel,** OSB #01176
rengel@schiffhardin.com
One Market, Spear Street Tower, 32nd Floor
San Francisco, CA 94105
Telephone:   (415) 901-8700
Facsimile:   (415) 901-8701

**HARRANG LONG GARY RUDNICK P.C.**
**Craig J. Capon,** OSB #98192
craig.j.capon@harrang.com
360 East 10th Avenue, Suite 300
Eugene, OR 97401-3273
Telephone:   (541) 485-0220
Facsimile:   (541) 686-6564

Of Attorneys for Plaintiffs
CHIMPS, INC., INTERNATIONAL PRIMATE
PROTECTION LEAGUE, and MARGUERITE GORDON

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| CHIMPS, INC., INTERNATIONAL PRIMATE PROTECTION LEAGUE, and MARGUERITE GORDON,<br><br>Plaintiffs,<br><br>vs.<br><br>PRIMARILY PRIMATES, INC.,<br><br>Defendant. | Case No.: 07-6149-HO<br><br>**DECLARATION OF LEE THEISEN-WATT IN SUPPORT OF PLAINTIFFS' SUR-REPLY TO DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO CHANGE VENUE** |

I, Lee Theisen-Watt, declare as follows:

1.   I was the Court-Appointed Temporary Receiver for defendant Primarily Primates, Inc. ("PPI"), during the period of October 13, 2006 through May 1, 2007.

Page 1 -   DECLARATION OF LEE THEISEN-WATT IN SUPPORT OF PLAINTIFFS' SUR-REPLY TO DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO CHANGE VENUE

2. In my role as Temporary Receiver, I was directed by the Court, as I "deem[ed] necessary, and in reliance upon the advice of animal health care experts, to make any other decisions or to undertake actions [I] deeme[ed] to be in the best interests of the animals, individually and collectively, ... including, but not limited to, the removal or transfer of any such animals to other facilities which meet appropriate standards for their particular needs...."

3. Pursuant to that authority vested in me, and based on the dangerous and unhealthy conditions at PPI, and after consultation with veterinarians and other animal care experts and investigation of potential permanent homes for the animals, I arranged for and oversaw the transfer of the two chimpanzees, twelve gibbons and the steer that are the subject of the lawsuit in the federal court in Oregon ("the Oregon Action").

4. My decision to transfer each one of these animals was based on my belief that: (a) the PPI facility was unsuitable for the proper health and care of these animals; (b) it was in the best interests of PPI to transfer the animals and reduce the burden on PPI to feed and care for the animals given the already overcrowded conditions; and (c) it was highly unlikely that PPI could ever be as supportive and healthy for these animals as the sanctuaries to which they were being sent.

5. My decision to transfer each one of these animals was also based on my understanding that each of the plaintiffs/sanctuaries in the Oregon Action intended to care for the animals involved for the rest of the animals' lives and was prepared to make the financial contributions necessary to do so.

6. I entered into Animal Transfer Agreements with principals for each of the plaintiffs/sanctuaries involved in the Oregon Action.

7. Although bound by the Orders of the Court and any legal limitations on transfer rights, at all times before I entered into the Animal Transfer Agreements and since that time, I believed that the animals transferred to the plaintiffs in the Oregon Action should be and would be transferred to these sanctuaries permanently and that the animals would live out the rest of their lives with the sanctuaries that are the plaintiffs in the Oregon Action.

8. Based on my conversations with the principals of the plaintiffs in the Oregon Action, I believe that everyone involved in the negotiation of the Animal Transfer Agreements and the transfer of the animals intended that the animals would live out their lives at the sanctuaries that are the plaintiffs in the Oregon Action.

9. At no time did I ever expect or believe that the animals involved in the Oregon Action would return to PPI. I expected the Texas Attorney General to continue to pursue the lawsuit and expected a new Board of Directors and management team to be put in place at PPI. I never expected that any legitimate board of PPI would request that the animals in question be returned to PPI. When I stated in my testimony on August 29, 2007 that the animals would only go back "if hell freezes over," I meant that I never expected them to return.

10. At the time of the transfers, I believed that it would be in the best interest of PPI for the animals to be transferred to and remain in their new homes on a permanent basis. I estimated the potential life time cost of care of these transferred animals to exceed one million dollars ($1,000,000.00). That is money that PPI did not have and was unlikely to be able to raise in the immediate future. It was also my opinion at that time that PPI could not afford to properly take care of all of the animals that remained at PPI after the transfer. Before the transfer, I checked to be sure that facilities receiving the animals were willing to commit to the cost of lifetime care – they were. All parties to the Animal Transfer Agreements relevant to the Oregon

Action understood that the value of the contracts – because of the costs of care for the animals transferred – would far exceed $75,000, based on the care the animals would need for the rest of their natural lives. From my perspective as the Temporary Receiver of PPI, I believed that transferring the animals on a permanent basis would provide a significant economic benefit to PPI and would improve the lives of all animals involved.

11. Based on my evaluation of PPI over the course of the Receivership, and based upon my investigation of the facilities to which the animals were transferred, it is my professional opinion that the animals involved in the Oregon Action are now healthier and living in better conditions than they could ever have been at PPI.

12. Based on my evaluation of PPI over the course of the Receivership, and based upon my knowledge of conditions and circumstances at the sanctuaries where the animals in question now live, it is my professional opinion that returning these animals to PPI would cause the animals to suffer.

I declare under penalty of perjury under the laws of the United States that these facts are true and correct and that this Declaration is executed this third day of October, 2007, at <u>Frisco</u>, Texas.

DATED: October 3, 2007

By: *[signature]*
Lee Theisen-Watt

s/ Bruce A. Wagman
BRUCE A. WAGMAN
*Pro Hac Vice*
(415) 901-8700
Attorney for Plaintiffs
CHIMPS, INC., INTERNATIONAL PRIMATE PROTECTION LEAGUE, and MARGUERITE GORDON

Page 4 - DECLARATION OF LEE THEISEN-WATT IN SUPPORT OF PLAINTIFFS' SUR-REPLY TO DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO CHANGE VENUE
34992.34992-0000
672354.1

# CERTIFICATE OF SERVICE

I certify that on October 4, 2007, I served or caused to be served a true and complete copy of the foregoing **DECLARATION OF LEE THEISEN-WATT IN SUPPORT OF PLAINTIFFS' SUR-REPLY TO DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO CHANGE VENUE** on the party or parties listed below as follows:

| X | Via CM / ECF Filing |
|---|---|
|   | Via First Class Mail, Postage Prepaid |
|   | Via Facsimile |
|   | Via Personal Delivery |

William H. Sherlock
Hutchinson, Cox, Coons, DuPriest, Orr & Sherlock P.C.
777 High Street
Eugene, OR 97401-2782

Attorneys For Defendant
Primarily Primates, Inc.

SCHIFF HARDIN LLP

By: _____
Bruce A. Wagman, *Pro Hac Vice*
bwagman@schiffhardin.com
Robert G. Engel, OSB #01176
rengel@schiffhardin.com
Telephone: (415) 901-8700
Facsimile: (415) 901-8701

HARRANG LONG GARY RUDNICK P.C.
Craig J. Capon, OSB #98192
craig.j.capon@harrang.com

Of Attorneys for Plaintiffs
CHIMPS, INC., INTERNATIONAL
PRIMATE PROTECTION LEAGUE, and
MARGUERITE GORDON

CERTIFICATE OF SERVICE